Good morning, your honors, and may it please the court. Alexandra Yates on behalf of defendant appellant Henry Anekwu, who's challenging his conviction and nine-year sentence for telemarketing fraud. Your honors, we've raised a number of issues, and I'm hoping to address three of them today. I'd like to start with the issue of Sergeant Ma's testimony and the prosecutor's comments in closing argument about the lengths to which the government went to prosecute Mr. Anekwu and his relative culpability, especially to David Chaperin, who was the testifying accomplice in this case. Your honors, this case is just like McCoy. The question in McCoy was whether to believe a testifying accomplice or the defendant himself. And the prosecutor told the jury in McCoy that the accomplice was less culpable. Instead, he believed that there was a very strong case against the defendant. And this court held that both of those statements were error requiring reversal. What we have in this case is quite clear. In McCoy, the standard really is that it is misconduct to express his personal opinion of the defendant's guilt or culpability. However, if a prosecutor's improper arguments respond to the arguments of the defense, they may serve to right the scale of justice. That's right, your honor. So aren't we really looking at in this particular case, then, are these a response to the arguments of the defense or are they expressing a personal opinion? Isn't that what we're looking at? That's certainly one of the questions, your honor. And I think McCoy is quite clear on that invited response question and is incredibly similar to this case. Because in McCoy, what the defense argued and what was what the government on appeal had argued was inviting the response. What the defense argued was that this testifying government witness was lying to gain favor. That's what we have here. And the court in McCoy held that does not invite a prosecutor's comments on the strength of the case or the relative culpability of the defendant and the witness. That goes beyond it. And in the more recent case of Sanchez, this court also talked about how, yes, you can right the scales and there is an invited response. But when you go beyond that, beyond an attack on credibility, that's not the same. And what we have here. Well, wasn't the argument, however, by the defendant that Shapir, I don't know if that's exactly how you say his name. I don't know either, your honor. Could not be trusted because he was testifying to prevent prosecution. And they also argued the government should have brought more documentary evidence to prove him guilty. To which the prosecutor responded, Shapir was not charged because only the organizational heads were being prosecuted and obtaining the documents from Canada was difficult. I don't, I'm still having a tough time understanding why those do not just respond to the defendant's inviting arguments. I think it would have been completely proper, your honor, to argue that Mr. Shapir, I don't know which it is, was credible, was to be believed that the documents were sufficient, that there were not more that was necessary. But what was done here was a relative culpability argument. Why did we, why did I choose to prosecute Mr. Inecuo and Mr. Inecuo alone? Well, because he's the most guilty. You didn't say he's the most guilty. Well, I think that's a fair reading of what it says. Maybe we went. Why don't you take the actual language that was used by the prosecutor and then we go from there. Absolutely, your honor. And so here I'm at Excerpt of Record 201. You may be thinking and wondering, well, why didn't we, we, the government, the prosecutor, charge Mr. Shapir? There he is on the phone, there he is on the tape. You know, why isn't the government just doing a clean sweep of everybody? Why didn't we charge Mr. Shapir? Why didn't we charge these other individuals? Why only Henry Inecuo? Think about this. Possibly the government is going after the heads of the organizations, the heads, the most culpable. And there was no objection made to any of this? There was not. This is plain error review. This is plain error review. But, your honor, this court has repeatedly reversed for similar, similar errors under the plain error standard. But where's the vouching? Where is the, where is it where he says that's why he's guilty? Well, I don't know how else to read this, your honor, an argument that he's, he's the one who is worth the extraordinary effort of prosecution. It's not an easy thing to do. It's not an easy thing to bring this person here and charge him. We didn't charge these other people, this testifying witness who we've asked you to believe instead of what the defense argues, because this is the one who merits the prosecution, who merits the extraordinary efforts. And what's your best case that that constitutes vouching? McCoy, your honor. I think it's completely on par with McCoy. So really, we're really applying the standard of McCoy in this particular case. And again, nobody challenged this at the time. District court didn't get a chance to think about it. So now we're having this brought to us. This is on plain error review. Yes, your honor. And the reason I think that we still prevail on plain error is because this court has said so repeatedly. And here I'm talking about the Combs case, Kerr, Smith, and Sanchez, all of which are in our briefs in 28J letter. All of the factors that were important in those cases for why the conviction should be reversed, even on the plain error standard, are present here. There was no curative instruction. And I understand your honor's point that no one objected. How could we give a curative instruction if nobody's objecting? And that's exactly the argument that Sanchez. I know what Sanchez's argument was. And I guess I'm trying again to suggest I've got to find this under McCoy to be absolutely plain error. And then I've got to say, not only is it plain error, but it's plain error which destroyed, if you will, any chance for this to be, in the interest of justice, what took place here. Yes, your honor. I understand it. And again, McCoy was a harmless error test. I agree. But McCoy does. I was going to ask you about that. McCoy is a harmless error test. And I think these later cases then say that when you have a McCoy error, you can have a reversal for plain error for reasons that I'm happy to address in a minute. But in McCoy, what this court said was, when the prosecution says that the case is strong against a defendant, the jurors are likely to believe the prosecutor because of his or her experience. That's why this type of error is so prejudicial. And then with these later cases, and in particular Sanchez focused on, is the timing, particularly when it comes in rebuttal, as it did here, when there's no curative instruction. And although that may be in part the fault of defense counsel, the judge has an independent duty to instruct when something like this happens. And then also whether the evidence is overwhelming. And a big part of that is whether it's a credibility contest, which we had here. And just to the idea of overwhelming evidence, I do want to point out that the jury in this case clearly struggled, at least somewhat, after only two days, essentially, of evidence. They spent the better part of a day coming to a verdict in this case. They sent that note, which indicates that, you know, they weren't necessarily clear on convicting Mr. Anecu. In Sanchez, there was only one hour of deliberations. So I do think that all of these factors that these cases have laid out on why this type of error is plain and requires reversal are completely applicable in this case. I did want to, unless there's additional questions on this issue, turn to what I'll call the Burgum issue. This is one of the sentencing issues where the district court referred to Mr. Anecu's inability to pay restitution as one of the 3553A factors. And in Burgum, this court held that comments that were almost identical. But weren't these just incidental comments when he says, you know, it's very clear if he's not going to be able to make restitution? But he didn't say, I'm going to consider that in my sentence.  And I'll again go to the transcript. Here I'm at Excerpt to Record 107. This is the beginning of where the court's talking about his E.R. 112, where he says, I recognize that the lengthy period of incarceration that I will impose will mean that the defendant will be unable to repay the victims who lost money in this case. But I doubt that imposing a lesser sentence would impose a corresponding greater recovery for the victims. We have absolutely no objection to that statement, Your Honor. That is the second statement that the court made. And I think that the what part of the record are you referring to? So it's right before that, Your Honor. And I think Burgum makes this distinction clear on page 111. I'm sorry, what page are we on? Excerpt to Record 111. This is the statement that's parallel to Burgum and I think the problematic one. And I'm starting partway through the large paragraph there. As to the defendant's financial condition, he reports that he has no assets and his wife has an approximate income of $2,000 a month, which is used to support the family. As a result, the defendant will be unable to make restitution payments. And it's painfully obvious to the court that the victims will not receive a penny of the money that was stolen from them. This is just like the comment in Burgum. And this is a comment, I'm turning back to Excerpt of Record 107 here, that the court said, this is a factor that the court said did affect his sentencing decision. The court says there on that line 16, the court has considered all of the 3553A factors. I've made an individualized assessment based on the facts and the arguments presented by the parties, but I wish to comment on several of those factors. Are we really arguing again about whether this line that you've read to us means the court is using this as an aggravating factor? Are we really arguing about that? Are you suggesting that, as you read outside of the context of what happened at sentencing, but nonetheless read the particular sentence, you're really arguing that the district court is using this as an aggravating factor. And the bottom line is that the inability to pay restitution could show that it considered imposing a lesser sentence to facilitate the payment of the restitution, which would not be aggravating at all. It would only be explaining why you give the sentence you give. So we're really looking at the whole of the transcript, aren't we, to see whether this was an aggravating factor or whether it wasn't. Yes, Your Honor, we're looking at the whole of the transcript. And what it starts with is saying, I'm about to discuss the factors that I considered in coming to the sentence, and I looked at the arguments of the parties. Here, the prosecution had specifically asked the court to consider Mr. Anakua's inability to pay restitution as an aggravating factor. Well, however, you will agree with me, won't you, that it is okay for the court to reference inability to pay restitution to show that it considered imposing a lesser sentence to facilitate the payment of the restitution. You'd agree that that would be okay, right? That is okay, and that's the second statement the court makes when the court makes... But isn't that on page 112, line 7, where he's talking about this issue, but I doubt that imposing a lesser sentence would impose a corresponding greater recovery for the victims. Isn't that in line with what Judge Smith is saying? That is, and that's exactly what was distinguished in Burgum, on page 815 of Burgum, as what is proper. But the court also said before, when the court made that comment, he started that with, I have also considered restitution, and went into that comment. The earlier part, the one on 111 that I've pointed to, is part of what he said is his consideration of the history and characteristics of the defendant. So, if I'm arguing about how to construe a particular situation here, what is my standard of review for this sentence? This is on plain error, and Burgum also was on plain error. And Burgum was quite clear, and this is at page 814 of Burgum, that we can't assume the district court gave no weight to a factor it explicitly mentioned. This argument, more or less, is respectfully what Judge O'Scanlan argued in Burgum, and that was the dissent. The majority rejected it. In Burgum, it was a fleeting reference, a passing reference. It was clear that the court had relied on other factors as more important. The Burgum court said that doesn't matter. We take the court at its face value. This is what this court also has recently said in Tapia. Additionally, Burgum said, if we can't be sure the court didn't consider it, we remand. So, I think this case is absolutely on all fours with Burgum. Here, perhaps even more so, because the government had explicitly asked the court to consider this as an aggravating factor. I also, Your Honor, did want to address the jury note. I see I'm running out of time. I would like to reserve for rebuttal, but I do just want to briefly say- Sorry, you've only got 50 seconds left, including rebuttal, Counsel. Then I'll reserve. Thank you, Your Honor. But we have read your briefs. Thank you very much. Thank you, Counsel. We'll hear from the government. May it please the court, my name is Ellen Lindsey. I'm an assistant United States attorney in Los Angeles. I was trial counsel. My name is Chip Peary. First of all, I really want to thank you so much for accommodating my schedule and moving the oral argument. And, of course, Murphy's Law, the hearings on Monday ended up getting continued at the last minute. So, I apologize. But I really- We were happy to do so, Counsel. And I appreciate Counsel's flexibility as well. It was a difficult situation for me, and I appreciate it. I was the prosecutor who tried the case, and I was the prosecutor who made the closing argument. And, again, it is a plain error review. And Counsel likens this case to United States v. McCoy. But in McCoy, the prosecutor who had been on the case prior to the prosecutor trying the case actually got up on the witness stand and explicitly stated, well, we made a deal with the cooperator because he's less guilty than the defendant sitting over there. And the defendant sitting over there is the guiltiest one, which is why we made deals with these other guys and went to trial against this guy. In my closing argument, I said nothing of the kind. And I can assure your honors, I've been a prosecutor for a long time. I understand that it is highly improper to place the government's prestige behind a prosecution by- It's called vouching, right, Counsel? Yes. Vouching or putting the government's, again, the government's prestige by mentioning a reference to extra record information. The defendant had argued in her closing argument, or in his closing argument, that, first of all, had argued that the Canadian investigators had many, many holes in their investigation. And this is why I referred to the fact that it's not as easy as just getting a search warrant, getting a wiretap, et cetera, in the United States. So it was a response to what the defense brought up as- If, in fact, it was not to serve to right the scale of justice, you can't really disagree with your opponent in saying that these are personal opinions, can you? Your honor, I'm not sure which part. Well, that Shapir, or Shapiri, was not charged because the organizational heads were being prosecuted. There's no evidence about that. Or that obtaining documents from Canada was difficult. There's no evidence about that. Unless you're serving to right the scale of justice, it seems to me these are improper arguments. Well, your honor, there was evidence about the difficulty in obtaining evidence from Canada in that Sergeant Ma testified about the processes and how difficult they were. There was an objection only to a question that I asked of Sergeant Ma, whether you could just arrest somebody over the border. But there was no objection to the questions that I asked about the difficulty of obtaining evidence from Canada. And I referred to that, and it was in response, your honor, but I don't believe it would have been improper, even if it hadn't been, simply to refer to that testimony to say, there may be a good explanation here. In the record you heard, it's difficult to do these things. So the criticism of the Canadian law enforcement officers by discussing the holes in their investigation, or the alleged holes, we did respond to that with evidence at the trial. What about the organizational heads? Well, your honor, in this case, there was no dispute but that the government's whole theory of the case was that the defendant was the head of the organization. Well, I understand that, but the argument is, why didn't you prosecute all these other people who are here trying to say bad things about the defendant? Your honor, the defense attorney in her closing argument herself brought this up to the jury in stating that the government does not prosecute lower-level employees of Canadian fraud organizations. And her claim was that Chapiri had duped us into believing that he was a lower-level employee because he knew that, as a matter of course, the government does not prosecute any but the heads of the organizations. So to the extent my argument could be read as an indication that there's some kind of prestige of the government behind going after the heads, this was never a dispute in the case that the government believed the defendant was the head of the organization. To say that he had that role is different to say we believe, for some reasons that aren't in the record, that he's guilty. And again, your honor, to the extent that there could be any indication of that, the defendant himself raised that in his closing argument and presented it in a much more explicit way to the jury. The end of the defendant's argument was that Chapiri was off living the high life because he had duped the government into believing that he was a mere employee when in fact he was the head of the operation. And the government was responding to that as well. I did want to address the Burgum issue, your honors. In Burgum, this court held that it was of extreme importance that the district court explicitly stated, I consider the defendant's inability to pay restitution as an aggravating factor. In this case, the judge was commenting in his colloquy regarding the 3553 factors, he was commenting regarding his observations of the trial and of the victims. And it was entirely proper for him to note that it was particularly sad that none of these victims who were so devastated by the defendant's crime would receive any payment. It was not an explicit comment that he was going to aggravate or enhance the defendant's sentence based on his inability to pay. In fact, he did, as he's required to do, consider 3553A7, the ability to pay restitution and stating that it wouldn't help any to have a lower sentence because the defendant would not be able to pay restitution. Your honors, I do want to leave you with the fact that the evidence in this case was absolutely overwhelming. You have Mr. Ciperi's testimony that the defendant was the head of the organization, that they preyed upon the elderly and the lonely, and you have all of the documentary evidence that corroborates that. Perhaps the most telling piece of evidence was the comparison of the defendant's known handwriting in his corporate application and this note to one of the victims in which he stated that he was so happy for her and so considered of her, and we put that up on the screen, and it absolutely matched. And the defendant's only defense was that he was an absentee owner and this was vacation packages that they were selling, but the only evidence of vacation packages was that it was part of the scheme. So in short. Let me go back to the restitution situation. Would you turn to page 123, 124 of the record? Do you have it? As I understand, this is the government's position re-sentencing factors. And if you look at page 124, 123, we're talking here government's position re-sentencing factors. Seven factors says the need to provide restitution to any victims of the offense. Defendant has no significant assets, will be deported to Nigeria following his incarceration. Thus, it is highly unlikely the defendant will ever pay restitution to his victims. This is an aggravating factor. I blew it, Your Honor. I definitely should not have. Well, it seems to me that this kind of goes along with what the pre-sentence investigation report may have done, and therefore, it seems to me that we have to worry just a little bit about this sentence. Well, yes, Your Honor, and I was not aware of the Burgum case. However, apparently the district court was because he didn't listen to me in that aspect of it. And he clearly was simply discussing his consideration of all of the factors. And Burgum required, Burgum depended on the fact that it was an absolute explicit statement by the district court that it was going to aggravate, it was an aggravating factor that the defendant had the inability to pay. So here it was my mistake, Your Honor, absolutely. But the district court kind of saved it from error by not following that argument of mine, which Judge Walter often declines to follow some of my arguments. Well, it seems to me that this is an area that would benefit from further definition. Don't you agree? Because it seems to be from the cases in Burgum quite unclear. If he'd used the magic word aggravating, Burgum would have come into play. He didn't use the magic word. Your Honor, I was very shocked when I read Burgum because I think it's a very difficult situation because a court does have to consider in 3553A7 the ability to pay restitution. And for example, I have another case that's on appeal where the same argument is being made. And there the defendant took these millions of dollars and just blew it in the most horrifying fashion, women, drugs, gambling, crazy lifestyle. To me, that seems to be something, you know, so when it came down to time to pay restitution, he had the inability to pay. But that's because he took all of the money that he'd gotten and he just blew it. To me, that is a consideration that the district court should be able to use. That didn't happen in this case. Obviously, I'm not saying it, although the defendant certainly made hundreds of thousands of dollars and we don't know where it went. But when I read Burgum, that's why I think I made this mistake, Your Honor, in arguing that it was an aggravating factor. But luckily, the judge did not pick up on that for you. You know, Judge Walter really does save me from my own stupidity on a regular basis. My question is that, given what the government argued, given what the judge said, can I in context suggest that he was doing exactly what happened in Burgum? I don't believe so, because. So what's my standard of review on that particular matter? Well, I believe defense counsel conceded it's plain error because there was no objection. But again, he only. One thing that Judge Walter did note, and I've seen him note this before, is that when one of these cases goes to trial and the victims get up on the stand and they testify, it just breaks your heart into pieces because of the devastation that's been visited on them. He comments about that. And I believe that this is part, if you look at the context of it, of his commenting on the devastation to the victims. And yes, it is part of it that these victims will never be made whole, and thus they will continue to suffer the consequences of the crime long after the defendant is out of custody. It's just devastating. If you read the context of his comments, I think it's totally appropriate for him to note that, yes, the crime, the effects of the crime are even worse on the victims because they'll never see assent. This is very different from Burgum, which was a bank robbery case, and the judge stated specifically this is an aggravating factor that he can't pay. Thank you, counsel. Thank you very much, Your Honors. And again, thank you for accommodating my schedule. Ms. Yates, you have some reserved time. Not much, less than a minute. I'll be very brief, Your Honor, because I think Mr. Smith hit the nail on the head. We can't be sure here, especially in light of the government's express invitation to consider this as an aggravating factor, that the court didn't. And this court said in Burgum, at page 816, if we can't be sure the court didn't weigh this as a factor, we will remand. Did the court use the magic words aggravating factor? No. But the court said it was a factor considered as part of the 3553A analysis. It said it is painfully obvious he won't be able to pay. I don't see how that could have been a mitigating factor. And again, if there's any doubt, this court said in Burgum, we take the court at its word if it mentions a factor that it considered it. But even if we're not sure, we're going to remand here because it's that important. And as this court mentioned in Tapia recently, there's really no harm. If the court wants to clarify, the court can do that. But when we think there may have been an error at sentencing, we should remand for reconsideration. I see that I'm out of time, Your Honors. Thank you very much, Counsel. The case just argued will be submitted for decision. And we will hear argument next in Richardson v. Potter.
judges: Nelson, O'scannlain, Smith